UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
CINDY GATTO, on behalf of herself and all others    :
similarly situated,                                       : Case No. 22 Civ. 6397

                          :
                    Plaintiffs,          : **CLASS ACTION COMPLAINT**

                         :
            - against -              :
                         :
PSP STORES, LLC d/b/a PET SUPPLIES "PLUS",   :
                         :
                 Defendant.         :
---------------------------------------------------------------- X

Plaintiff Cindy Gatto ("Plaintiff" or "Gatto"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

**<u>INTRODUCTION</u>**

1.      This lawsuit seeks to recover unpaid wage compensation and other damages for Plaintiff, similar dog groomers and stylists, and other similar positions (collectively, the "Groomers") who worked or have worked for Defendant PSP Stores, LLC d/b/a Pet Supplies "Plus" ("Defendant" or "PSP") in New York State for violations of the New York Labor Law ("NYLL"), Arts. 6 & 19, *et seq*.

2.      Defendant sells pet supplies and dog grooming services in New York and employs more than 1,000 workers in New York State, many of whom are Groomers.

3.      At all relevant times, Defendant has compensated Plaintiff and other Groomers with an hourly-rate wage or commissions, which depend on achieving a certain level of grooming sales each week.

4.      At all relevant times, Defendant required its Groomers, including Plaintiff, to clock in and out each day.

5.      However, as a matter of policy and practice, Defendant would only pay Plaintiff Gatto and the other Groomers for time spent in the store, even as Defendant required Plaintiff and the other Groomers to perform many other duties off the clock, such as communicating with Defendant's clients and booking appointments.   In addition, Defendant's managers routinely adjusted the time entries of the Groomers to reduce the amount of working time recorded.  Plaintiff and the Groomers frequently did not take a lunch break and worked during that time.

6.      In addition, Defendant requires Plaintiff and the other Groomers to pay for purchasing and maintaining their grooming tools from their own wages, even though these tools are essential to their job and are not permissible deductions under the NYLL.

7.      Defendant's policies and practices cause Groomers to not be paid for all hours worked, to be paid less than minimum wage, to not be paid for all overtime hours worked, and to not be given accurate wage statements reflecting all hours worked, in violation of the NYLL

8.      Moreover, Defendant failed to pay Plaintiff and other Groomers all of their agreed-upon commissions, as Defendant pays Groomers commissions on the discounted rate as opposed to the full-service rate.

9.      Because the harm suffered by Plaintiff and her fellow Groomers was consistent within the last six years, Plaintiff brings all Causes of Action as a class action and will seek certification under Rule 23 of the Federal Rules of Civile Procedure for the "Class," defined as follows:

> All Groomers working in the State of New York for
> Defendant, who were employed at any time in the six years
> prior to the filing of this Complaint (the "Class Members").

## JURISDICTION & VENUE

10.     Jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1332 and the Class Action Fairness Act.

11.     Upon information and belief, there are Class Members who are citizens of states other than Defendant, such as Plaintiff.

12.     The amount in controversy for Plaintiff and the Class Members exceeds $5,000,000, exclusive of interest and costs.

13.     Plaintiff seeks unpaid wages and liquidated damages for violations of the NYLL, equal to 100% of the unpaid wages, and statutory damages for violation of the wage-statement provisions of the NYLL.

14.     Because there are, upon information and belief, over 100 members of the Class working for Defendant in full-time positions, at any time, there are over 5,200 full-time workweeks in which Class Members are believed to have accrued damages each year (31,200 total for six years).

15.     Considering turnover, upon information and belief, there are over 300 Class Members who were employed during the relevant period, who would have been denied accurate wage statements and who could recover up to $5,000 each, as described in the Sixth Cause of Action below.

16.     This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2), because events giving rise to this action occurred in Kings County, New York.

## PARTIES

*Plaintiff Cindy Gatto*

17.     Plaintiff Cindy Gatto is an adult individual who resides in Queens, New York.

18.     Plaintiff Gatto has worked for Defendant as a Groomer from in or about October 2015 until February 2018 and again from in or about May 19, 2019, through the present.

*Defendant PSP Stores, LLC*

19.     Defendant PSP Stores, LLC is a foreign limited liability corporation, headquartered in Michigan.

20.     Defendant does business as Pet Supplies Plus.

21.     Defendant is registered with the New York Department of State as an Ohio corporation.

22.     Defendant was acquired by Franchise Group, Inc., effective March 10, 2021.

23.     Defendant is a subsidiary of Franchise Group, Inc.

24.     The Franchise Group, Inc. is a publicly traded company headquartered in Delaware, Ohio and incorporated in the State of Delaware.

25.     Upon information and belief, the members of Defendant's LLC are not residents of New York State.

26.     Defendant's sole member is PSP Group, LLC, a Delaware corporation headquartered in Michigan.

27.     PSP Group, LLC's sole member is Pet Supplies "Plus", LLC, a Delaware corporation headquartered in Michigan.

28.     Defendant and the Franchise Group, Inc. are connected through a series of LLCs, which each have a sole member leading from the Franchise Group, Inc., down to Defendant, as follows:

| Entity | Jurisdiction | Sole Member |
|---|---|---|
| Franchise Group New Holdco, LLC | DE | Franchise Group, Inc. |
| Franchise Group Intermediate Holdco, LLC | DE | Franchise Group New Holdco, LLC |
| Franchise Group Intermediate PSP, LLC | DE | Franchise Group Intermediate Holdco, LLC |
| Franchise Group Newco PSP, LLC | DE | Franchise Group Intermediate PSP, LLC |
| PSP Midco, LLC | DE | Franchise Group Newco PSP, LLC |
| Pet Supplies "Plus", LLC | DE | PSP Midco, LLC |
| PSP Group, LLC | DE | Pet Supplies "Plus", LLC |
| PSP Stores, LLC | OH | PSP Group, LLC |

*See* Exhibit 21.1 (Subsidiaries of Franchise Group, Inc.) to Form 10-K of Franchise Group, Inc. (Feb. 23, 2022), https://ir.franchisegrp.com/node/14041/html (last accessed Sept. 23, 2022).

29.     Defendant operates a nationwide pet-supply and pet-grooming retail business.

30.     Defendant's principal place of business is located at 17197 North Laurel Park Drive, Suite 402, Livonia, Michigan 48152.

31.     Defendant is headquartered at 17197 North Laurel Park Drive, Suite 402, Livonia, Michigan 48152.

32.     Defendant owns, operates, or franchises over 400 stores in the United States.

33.     Defendant owns and operates over 40 stores in the state of New York, including those located in:

      a.   Amherst, New York (Niagra Falls Blvd.)

      b.   Amherst, New York (Sheridan Dr.)

      c.   Blasdell, New York

      d.   Buffalo, New York

      e.   Central Islip, New York

      f.   Cheektowaga, New York

      g.   Cicero, New York

      h.   Cortland, New York

      i.   Deer Park, New York

      j.   Depew, New York

      k.   East Amherst, New York

      l.   East Northport, New York

      m.   Fairpoirt, New York

      n.   Fishkill, New York

      o.   Glenville, New York

      p.   Greece, New York

      q.   Howard Beach, New York

      r.   Lake Ronkonkoma, New York

s.  Manhasset, New York

t.  Maspeth, New York

u.  Medford, New York

v.  New Hartford, New York

w.  Oceanside, New York

x.  Olean, New York

y.  Orchard Park, New York

z.  Penfield, New York

aa. Rensselaer, New York

bb. Rochester, New York (Chili Ave.)

cc. Rochester, New York (Monroe, Ave.)

dd. Stony Point, New York

ee. Troy, New York

ff.  Valley Stream, New York

gg. Watertown, New York

hh. West Hempstead, New York

ii.  West Seneca, New York

jj.  Williamsville, New York

34.   In its stores, Defendant sells a wide variety of pet products (foods, pet care products) and in-store pet services (grooming, adoption, training).

35.   Defendant is an "employer" within the meaning of N.Y. Lab. Law §§ 190(3), 651(6).

36.     Defendant maintains control, oversight, and direction over its operations and employment practices.

37.     At all times relevant, Defendant has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action on behalf of herself and the Class, pursuant Rule 23(a) and (b).

39.     The persons in the Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendant.

40.     Upon information and belief, the size of the Class exceeds 300 individuals.

41.     Common questions of law and fact exist as to the Class that predominate over any questions only affecting them individually and include, but are not limited to:

a.  Whether Defendant failed to pay proper overtime compensation for all work-hours, in violation of the NYLL;

b.  Whether Defendant failed to pay proper minimum wages for all hours worked, in violation of the NYLL;

c.  Whether Defendant deducted from the wages of Plaintiff and the Class, in violation of the NYLL;

d.  Whether Defendant failed to pay all commissions due to Plaintiff and the Class, in violation of the NYLL;

e.  Whether Defendant failed to keep accurate time records for all hours worked by Plaintiff and the Class;

f.  What proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

g.  Whether Defendant failed to furnish Plaintiff and Class with an accurate statement of, inter alia, wages, hours worked, and rates paid as required by NYLL § 195;

h.  The nature and extent of Class-wide injury and the appropriate measure of damages sustained by Plaintiff and the Class; and

i.  Whether Defendant's failure to pay Plaintiff and the Class was a reasonable, good-faith mistake.

42.  Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class litigation and employment litigation.

43.  Further, Plaintiff and the Class have been equally affected by Defendant's failure to pay proper wages and provide proper wage statements.

44.  Plaintiff's claims are typical of those of the Class.  Plaintiff and the other Class members were subjected to Defendant's policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records.  Plaintiff's job duties are typical of those of the Clas.

45.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Class have been damaged and are entitled to recovery because of Defendant's common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

46.  This action is properly maintainable as a class action under Rule 23.

## FACTUAL ALLEGATIONS

***The Job of a Groomer***

47.     Plaintiff has worked for Defendant as a Groomer.

48.     As a Groomer, Plaintiff's primary duty was and is to provide grooming services to the pets of customers who bring their pets to PSP's retail store.

49.     After working for Defendant as a Bather at their Maspeth location for about a year and a half, Defendant transferred Plaintiff to Defendant's retail store located at 601 Portion Road, Lake Ronkonkoma, New York 11779 to train under the Regional Grooming Manager from about June 2015 to September 2015.

50.     Plaintiff then worked in the grooming salons at Defendant's retail store in Howard Beach, Queens County, New York from about October 2015 through February 2018.

51.     Plaintiff has worked in the grooming salons at Defendant's retail store on Grand Avenue in Maspeth, Queens, New York 11378 since about May 2019.

52.     While employed by Defendant as a Groomer, Plaintiff was required to report to a Store Manager.

53.     Plaintiff's Store Manager reported to a District Manager, who in turn reported to a Regional Manager, who in turn reported to corporate management.

54.     While employed by Defendant as a Groomer, Plaintiff has been and is a W-2 employee.

55.     While employed by Defendant as a Groomer, Plaintiff's compensation was promised to be an hourly-rate wage or commissions depending on achieving a certain level of grooming sales each week.

56.     The other Groomers, like Plaintiff, have performed the same primary duties: providing grooming services to the pets of Defendant's clients who bring their pets to Defendant's stores.

57.     The other Groomers, like Plaintiff, have reported up through the same chain of command to corporate headquarters, starting at the store manager level through a district manager through a regional manager and then to corporate management.

58.     The other Groomers, like Plaintiff, have been W-2 employees.

59.     The compensation of the other Groomers, like Plaintiff's compensation, was promised to be an hourly-rate wage or commissions depending on achieving a certain level of grooming sales each week.

***Defendant Failed to Record All Hours Worked***

60.     From about October 2015 through February 2018, Plaintiff normally worked five scheduled days a week, from 9:00 to 6:00 pm, which, on average totaled over 40 hours per week.

61.     Since returning to work for Defendant at the Maspeth location in 2019, Plaintiff normally works three scheduled days a week, which, on average, total about 30 hours per week.

62.     At the Maspeth location, Plaintiff is scheduled to work 9:00 am to 6:00 pm. Plaintiff starts her shift at about 8:45 am, so she is ready for customers by 9:00 am.

63.     Defendant only records, and Plaintiff is only paid for the time she spends working inside the store.

64.     However, as part of her job as a Groomer for Defendant, Plaintiff has to spend significant time each week doing other work from home and outside of her scheduled hours.  This includes communicating with customers to book and confirm appointments, accessing Defendant's scheduling portal, and maintaining her equipment.

65. This work usually takes about three to four hours per week.

66. Plaintiff records her hours in an electronic time-keeping system maintained by Defendant.

67. Defendant can adjust the time entries made by Plaintiff.

68. Defendant has, in fact, adjusted the time entries made by Plaintiff and her fellow Groomers, such as to, among other things, add a 30-minute lunch break whether the lunch break was taken.

69. Plaintiff, however, frequently is unable to take a lunch break because of the demands of the job.

70. Defendant often only staffs one Groomer per shift.  Even when two Groomers are working together on a shift, they are responsible for different pets.

71. That is, Plaintiff is unable to leave the salon and the dogs under her care unattended for longer than 10 to 15 minutes at a time.

72. And, even when she is not caring for a customer's pet, she still must answer the phones and be available to in-person customers.

73. As a result, she is never fully relieved of duty for an extended period of time.

74. Nevertheless, because of Defendant's policy and practice, Plaintiff is not credited with work time for these "breaks."

75. In all, on average, Defendant fails to credit Plaintiff for about three or four hours a week, whether resulting from the unlawful adjustments or failure to pay and record the off-the-clock work.

76. The other Groomers, like Plaintiff, have regularly performed off-the-clock work as it is an inherent part of performing the position for Defendant.

77.     The other Groomers, like Plaintiff, have used the same time-keeping system to clock in and clock out.

78.     The other Groomers, like Plaintiff, have had their time records adjusted by management to add a 30-minute lunch break regardless of whether the Groomers have been able to take the lunch break in whole or in part.

79.     The other Groomers, like Plaintiff, have regularly been unable to take an uninterrupted lunch break in many workweeks, non-overtime as well as overtime workweeks.

80.     As a result of these timekeeping practices, the other Groomers, like Plaintiff, have been systematically undercompensated for their time worked.

81.     As a result of these timekeeping practices, the other Groomers, like Plaintiff, have received wage statements from Defendant that fail to accurately state the number of hours worked by the Groomers.

***Failure to Pay Overtime, the Minimum Wage, and All Hours Worked***

82.     Plaintiff and the other Groomers have been subject to the common policy and practice of not paying overtime wages.

83.     Defendant pays Groomers either their weekly commissions or an hourly rate at the New York State minimum wage for all hours recorded.

84.     As explained above, however, Defendant fails to credit Groomers for all hours worked and, therefore, their average hourly rate regularly falls below the minimum required by the NYLL.

85.     For example, as of June 2020, Plaintiff had earned $498.72 in non-commission wages.  These wages were only paid on the time Defendant recorded.

86.     As a result, Plaintiff was paid less than the minimum wage and not paid all applicable non-overtime pay during the pay period when she earned those non-commission wages.

87.     Further, Defendant does not pay overtime wages, even when Plaintiff and other Groomers work over 40 hours a week.

88.     Plaintiff and other Groomers are non-exempt employees.  Even if Defendant misclassified her and other Groomers as overtime-exempt under the retail sales exemption, Plaintiff did not earn at least the requisite one and one-half times the minimum wage

89.     For example, on June 19, 2020, Plaintiff received a paycheck for $963.00 for 45.13 recorded hours of work.  The full amount was in commissions – no additional wages were paid for the 5.13 hours of overtime worked.

90.     Her average hourly rate on the face of this paystub, amounted to about $21.34, before accounting for the off-the-clock work described above and any deductions described below.

91.     At the time, pursuant to the NYLL, Defendant was not entitled to apply the retail sales exemption to Plaintiff unless she earned at least one and one-half the $15 New York State minimum wage ($22.50).

92.     As a result of these time and payroll practices, Groomers, like Plaintiff, have been systematically undercompensated for their time worked.

***Tools of the Trade***

93.     Beyond these timekeeping practices, Plaintiff and the other Groomers have also been subject to common policies and practices established by Defendant regarding the purchase and maintenance of grooming equipment.

94.     Defendant's policy and practice is that the Groomers are responsible for purchasing and maintaining their grooming equipment without reimbursement by Defendant.

95.     Defendant's job postings state that applicants for the Groomer a position must have the "[a]bility to provide [their] own equipment (clippers/blades/scissors/etc.)."

96.     Defendant provided Plaintiff with a list of tools to purchase, so she could perform her duties as a Groomer.

97.     The mandatory grooming equipment includes:  nail clippers, electric hair clippers, shears, brushes, combs, rakes, dematting tools, comb attachments, and clipper blades.

98.     Entry-level sets of equipment typically costs about $1,000 in total.

99.     Plaintiff and the other Groomers have been required to purchase or maintain their grooming equipment in both non-overtime and overtime workweeks.

100.    Defendant also failed to supply Plaintiff and other Groomers with supplies necessary to care for all of the dogs brought into the store by Defendant's customers.

101.    For example, Defendant does not supply Plaintiff with leave-in conditioner and paw-pad wax, which are needed for certain pets.  Bottles of this conditioner cost between $20 and $50 dollars.

102.    Over the course of her employment, Plaintiff was required to purchase nail clippers, electric hair clippers, shears, brushes, combs, rakes, dematting tools, comb attachments, clipper blades, equipment bags, and a rotary tool (Dremel), along with other tools, supplies, and replacement parts.

103.    For example, in 2021, Plaintiff replaced her electric clippers. This cost her $400.

104.    Plaintiff regularly purchases new dematting rakes on a near monthly basis.

105.    Plaintiff also regularly replaces her undercoat rakes, which cost her about $25 each.

106.    Plaintiff also had to incur costs to maintain her grooming equipment, including sharpening blade sharpening and purchasing replacement parts.

107.    To maintain her electric clippers, throughout her employment, Plaintiff has regularly purchased blade latches, blade drives, and power cords.

108.    Plaintiff must also regularly replace her blades.  Blades cost about $30 each.  Over the course of her employment with Defendant, Plaintiff has purchased replacement blades once or twice per year.

109.    Blade sharpening typically costs a Groomer, such as Plaintiff, about $150 to $450 every two months.

110.    Defendant knows that Groomers, such as Plaintiff, incur these costs.

111.    Blade sharpeners often come to Defendant's retail location in a truck or van, which is outfitted to sharpen the Groomers' blades onsite.

112.    In or about early summer of 2022, Plaintiff spent about $440 sharpening her blades in this manner.

113.    Throughout her employment Plaintiff has spent between about $1,500 and $3,000 per year purchasing and maintaining her grooming equipment.

114.    As a matter of common policy and practice Defendant does not reimburse the Groomers for the purchase or maintenance of their grooming equipment.

115.    The grooming equipment is essential for the performance of Plaintiff and the other Groomers' primary duties.

116.    That is, Groomers need this equipment to brush, shave, and style the dogs, and to clip their nails.

117.    The grooming equipment is essential for Defendant to provide the services offered to the public.

118.     The grooming equipment is essential for Defendant to realize revenues and profits from its grooming services.

119.     As a result of these policies and practices concerning grooming equipment, Defendant is in effect imposing wage deductions on Plaintiff and the other Groomers, who have had to pay for and to maintain the grooming equipment from their wages.

120.     The unlawful wage deductions are the amount of money that Plaintiff and the other Groomers have spent to purchase and maintain the tools they have been using to fulfill the duties of their position and to service Defendant's customers.

121.     As a result of these deductions, Plaintiff and the other Groomers have not received the minimum wages, straight-time wages, and overtime wages to which they were entitled.

122.     As a result of these deductions, the wage statements that Plaintiff and the other Groomers have received from Defendant have been inaccurate, as the wage statements have not properly identified these deductions.

***Failure to Pay Commissions***

123.     Plaintiff and the other Groomers have been subject to the common policy and practice of Defendant miscalculating (and thus underpaying) their commissions.

124.     Specifically, Defendant calculates Plaintiff's and the other Groomers' commissions based on discounted service rates instead of the listed service rates as Defendant promised.

125.     For example, Plaintiff has been paid commissions based on the discounted rate charged to customers instead of the price actually charged to the customer.

126.     That is, Plaintiff received a percentage of Defendant's sales assuming the customer used PSP's customer discount card, even if the customer did not do so for Plaintiff's services.  As a result, Plaintiff was underpaid on her commissions.

127.    At no point did Plaintiff agree to be paid commissions at a rate equal to the potentially discounted rate charged to the customer, as opposed to either the amount actually charged to the customer or the listed price of Plaintiff's grooming services.

128.    As a result of this policy and practice of miscalculating commissions, Plaintiff and the other Groomers have been underpaid the commissions they earned and are owed.

***Wage Statement Violations***

129.    The adjustments by Defendant of Plaintiff's time records, and otherwise requiring Plaintiff to work off-the-clock, result in Defendant providing inaccurate wage statements to Plaintiff, as the wage statements do not accurately state the hours worked by Plaintiff.

130.    Defendant did not list accurate hours worked on Groomers' paystubs.

131.    As a result, Defendant did not furnish Plaintiff and Class Members with an accurate statement of, *inter alia*, hours worked as required by NYLL.

132.    Defendant's failure to report Plaintiff's and Class Members' actual hours worked and basis of pay facilitated its unlawful wage-and-hours policies.

133.    That is, Defendant failed to provide Groomers with the information necessary to determine whether their weekly hours exceeded 40 in a single workweek, entitling them to overtime.

134.    Defendant further failed to provide Groomers with the information necessary to determine whether they were being compensated for all hours worked or at or above the minimum wage.

135.    This hindered Plaintiffs and Class Members' ability to challenge the unlawful wage payment at the time of the payment.

**FIRST CAUSE OF ACTION**
**NYLL – Failure to Pay Overtime Wages**
**(On behalf of Plaintiff and the Class)**

136.     Plaintiff incorporates by reference all preceding allegations.

137.     Defendant failed to pay Plaintiff and the Class at a rate of less than one and one-half time their regular rate for all hours worked.

138.     By the course of conduct set forth above, Defendant violated NYLL § 650, *et seq.*; 12 N.Y.C.R.R. § 142-2.2.

139.     Defendant's failure to pay all overtime compensation due to Plaintiff and the Class was willful or otherwise lacked sufficient good faith within the meaning of NYLL § 663.

140.     Due to Defendant's violations of the NYLL, Plaintiff and members of the Class are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**SECOND CAUSE OF ACTION**
**NYLL – Failure to Pay the Minimum Wage**
**(On behalf of Plaintiff and the Class)**

141.     Plaintiff incorporates by reference all preceding allegations.

142.     Defendant failed to pay Plaintiff and the Class at a rate of at least the applicable minimum wage in New York State.

143.     Plaintiff and other putative class members are Defendant's employees, as defined by NYLL § 651.

144.     Defendant failed to pay Plaintiff and the Class minimum wages for all work hours, after accounting for kickbacks, deductions, expenses, adjusted hours, and other off-the-clock work, as required by the NYLL and the supporting New York State Department of Labor regulations.

145.     Defendant's failure to pay all minimum wages due to Plaintiff and the Class was willful or otherwise lacked sufficient good faith within the meaning of NYLL § 663.

146.     Due to Defendant's violations of the NYLL, Plaintiff and members of the Class are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION
### NYLL – Failure to Non-Overtime Wages
### (On behalf of Plaintiff and the Class)

147.     Plaintiff incorporates by reference all preceding allegations.

148.     Plaintiffs and the Class are employees entitled to be paid for all hours worked.

149.     Defendant failed to pay Plaintiffs and the Class non-overtime wages to which they are entitled under NYLL §§ 650, *et seq*., specifically NYLL § 661(3), and the supporting New York State Department of Labor Regulations.

150.     Defendant had a policy and practice of refusing to pay non-overtime compensation for all hours worked to Plaintiffs and the Class.

151.     Defendant's failure to pay non-overtime compensation to Plaintiffs and the Class was willful or otherwise lacked sufficient good faith within the meaning of NYLL § 663.

152.     Due to Defendant's violations of the NYLL, Plaintiff and members of the Class are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### NYLL – Unlawful Deductions
### (On behalf of Plaintiff and the Class)

153.     Plaintiff incorporates by reference all preceding allegations.

154.     Defendant required Plaintiff and the Class to pay for their grooming equipment and incur related expenses, as part of carrying out their duties as Groomers.

155.     As a result, Defendant reduced Plaintiff's wages below the minimum wage and otherwise violated NYLL § 193 and 12 N.Y.C.R.R. §§ 142-2.10, 195-2.1.

156.    Defendant's actions due to Plaintiff and the Class were willful or otherwise lacked sufficient good faith within the meaning of NYLL §§ 198, 663.

157.    Due to Defendant's violations of the NYLL, Plaintiff and members of the Class are entitled to recover from Defendant their unlawfully deducted wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
### NYLL – Failure to Pay Commissions
### (On behalf of Plaintiff and the Class)

158.    Plaintiff incorporates by reference all preceding allegations.

159.    Defendant failed to pay Plaintiff and the Class at the agreed-upon commission rate.

160.    As a result, Defendant unlawfully deducted from Plaintiff's wages in violation of NYLL § 193.

161.    Defendant's actions due to Plaintiff and the Class were willful or otherwise lacked sufficient good faith within the meaning of NYLL § 198.

162.    Due to Defendant's violations of the NYLL, Plaintiff and members of the Class are entitled to recover from Defendant their unlawfully deducted wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
### NYLL – Notice and Record-Keeping Requirement Violation
### (Brought on behalf of Plaintiff and the Class)

163.    Plaintiff incorporates by reference all preceding allegations.

164.    Defendant did not supply Plaintiff and members of the Class with an accurate statement of wages as required by NYLL § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if

applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

165.    Due to Defendant's violations of NYLL § 195, for each workweek that Defendant did not provide a proper wage statement, Plaintiffs and members of the Class are each entitled to damages of $250 per workday, or a total of $5,000 per class member, as provided for by NYLL § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

A.    Certification of this case as a Class Action under Rule 23;

B.    Appointment of Plaintiff as the Class Representative;

C.    Appointment of Kessler Matura P.C. and the Employment Rights Group , LLC as Class Counsel;

D.    Unpaid overtime wages under the NYLL;

E.    Unpaid non-overtime wages under the NYLL;

F.    Unpaid minimum wages under the NYLL;

G.    Unpaid commissions under the NYLL;

H.    Statutory damages for failure to provide accurate wage statements;

I.    Liquidated damages;

J.    Attorney's fees and costs of the action;

K.    Pre-judgment interest and post-judgment interest as provided by law;

L.    A declaratory judgment that the practices complained of are unlawful; and

M.    Such other injunctive and equitable relief as this Court shall deem just and proper.

Dated: Melville, New York
        October 21, 2022

                        Respectfully submitted,

By:    /s/ Troy L. Kessler   
        Troy L. Kessler

**KESSLER MATURA P.C.**
Troy L. Kessler
Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

**THE EMPLOYMENT RIGHTS GROUP, LLC**
Joseph H. Chivers (*pro hac vice* forthcoming)
First & Market Building
Suite 650
100 First Avenue
Pittsburgh, PA 15222
Telephone: (412) 338-0763

*Attorneys for Plaintiff and the*
*Putative Class Action*